**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| JORDAN MITCHELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 4:17-CV-02327-SEP |
| v. | ) | |
| | ) | |
| CINDY GRIFFITH, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Jordan Mitchell's ("Mitchell" or "Petitioner") *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Doc. [1]. For the reasons set forth below, Mitchell's petition for writ of habeas corpus will be denied.

**I.   Background**

Mitchell is currently an inmate at Potosi Correctional Center in Mineral Point, Missouri. He was charged as a prior offender with three counts of assault in the first degree, three counts of armed criminal action, and one count of unlawful use of a weapon.  All the charges arose out of events on July 30, 2012, when Mitchell shot at three victims during separate incidents on the same day.  The State did not offer a plea agreement to Mitchell prior to his plea hearing. Mitchell's plea hearings occurred on two separate occasions on March 31 and May 15, 2014, in the Circuit Court of the City of St. Louis, Missouri.  During his plea hearing, the State recounted the evidence it would present at trial regarding Mitchell's guilt and stated that the maximum statutory punishment could be three life sentences, with the possibility of 45 additional years of

1

prison time. The State recommended that Mitchell receive a sentence of 20 years, and Mitchell's attorney requested sentencing of 5 to 10 years.

The court asked Mitchell to discuss the State's recommended sentence with his attorney off the record, and Petitioner did so. After that conference, Petitioner agreed that he understood that the court had made no promise regarding sentencing, that it was obligated to consider the full range of punishment, and that the court could sentence him to a term of years greater than the State's recommendation. Petitioner confirmed that he wished to proceed without a plea agreement and pleaded guilty to all counts. The court examined Mitchell, found that his plea was knowing and voluntary, and sentenced him to two consecutive sentences of 15 years' imprisonment, for a total of 30 years.

Mitchell filed a timely *pro se* motion for post-conviction relief pursuant to Missouri Supreme Court Rule 24.035, asserting that his plea counsel was ineffective for advising him that the court would likely impose a 15-year sentence. Doc. [8-5] at 8. On December 30, 2014, through appointed counsel, Mitchell filed an amended motion for post-conviction relief. *Id*. at 19-27. Mitchell asserted that his guilty plea was not knowing and voluntary, because plea counsel improperly advised Mitchell that he should expect a sentence of no more than 15 years' imprisonment. *Id*. at 24. The motion court subsequently denied Mitchell's Rule 24.035 motion. *Id*. at 28-34. Mitchell appealed to the Missouri Court of Appeals, which affirmed the motion court's ruling on the merits, denying his appeal. Doc. [8-3].

Mitchell subsequently filed a *pro se* petition for writ of habeas corpus in this Court, raising only one ground for relief. In Ground One, Petitioner again asserts that his plea counsel was ineffective for "advising" him that if he pleaded guilty he would likely receive a 15-year sentence. Doc. [1] at 6.

## II. Standard of Review

A federal judge may issue a writ of habeas corpus freeing a state prisoner, if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, the judge must not issue a writ if an adequate and independent state-law ground justified the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81- (1977).

"Federal habeas review exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under the AEDPA, a federal court shall not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000). "[A] state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence (citing 28 U.S.C. § 2254(e)(1))).

## III. Discussion

Petitioner claims that his plea counsel was ineffective for assuring him that if he pleaded guilty he was likely to receive a 15-year sentence. Petitioner contends that his plea counsel advised him that he should expect between 10 and 20 years if he pled guilty to all charges and that he would likely receive no more than a 15-year sentence. Doc. [1] at 7. Petitioner admits that his counsel did not extend any "guarantee" or "promise" regarding his likely sentence, but he argues that he reasonably relied on plea counsel's advice and that he "expect[ed]" that he would receive no greater than a 15-year sentence. *Id*. Petitioner asserts that reasonably competent plea counsel would have informed him that "there was, at best, an equal chance the court would adopt or reject plea counsel's recommendation in the context of an open plea." *Id*. at 10. He further contends that he would have insisted on going to trial if counsel had not advised him to expect a 15-year sentence. *Id*.

After a guilty plea, collateral review of the plea "is ordinarily confined to whether the guilty plea was both counseled and voluntary." *Pennington v. United States*, 374 F. Supp. 2d 813, 816 (E.D. Mo. 2005) (citing *United States v. Broce*, 488 U.S. 563, 569 (1989)). A plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action

4

open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In the context of a guilty plea, a defendant who pleaded guilty upon the advice of counsel may challenge the voluntariness of that plea through a claim of ineffective assistance of counsel. *Hill*, 474 U.S. at 56-57 (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1970)). The Supreme Court has held that the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, (1984), applies to ineffective assistance claims in the guilty plea context. *Hill*, 474 U.S. at 57-59. To satisfy the first deficient-performance prong of the *Strickland* test, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 57. To satisfy the second prong in the guilty plea context, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. Furthermore, "[w]hile a guilty plea taken in open court is not invulnerable to collateral attack in a post-conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (internal citation omitted). "[C]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Thompson v. United States*, 872 F.3d 560, 567 (8th Cir. 2017)

      In evaluating Mitchell's claim, the Missouri Court of Appeals correctly recognized that the *Strickland* ineffectiveness standard was applicable to his claim, and accurately stated that "[w]here a movant's conviction results from a guilty plea, claims of ineffectiveness of counsel are immaterial except to the extent that they infringe upon the voluntariness and knowledge with which the guilty plea was made." Doc. [8-3] at 3-4. The Missouri Court of Appeals also stated,

5

consistent with the Supreme Court's decision in *Lockhart*, "[t]hat the defendant would not have pleaded guilty and would have insisted on going to trial is a necessary part of showing prejudice after a guilty plea." *Id.* at 4.  The court determined that Mitchell could not establish that ineffectiveness of his plea counsel rendered his plea involuntary or unknowing, stating:

> When a movant alleges that his guilty plea was based on a mistaken belief about the sentence, the test is whether a reasonable basis existed in the record for that belief.  A mistaken belief is reasonable only when it is based on a positive representation upon which the movant is entitled to rely.
> The plea hearing transcript demonstrates that the court explained the permissible range of punishment.  The court gave Mitchell the opportunity to discuss the State's recommendation with his counsel off the record, since the State did not make its recommendation known to Mitchell or Mitchell's counsel prior to the hearing.  Counsel then did in fact go off the record to discuss the recommendation with Mitchell.  Once back on record, Mitchell's counsel confirmed Mitchell's decision to proceed with a guilty plea, and the court confirmed with Mitchell that he understood the implications of his decision . . . .
> On this record, Mitchell cannot demonstrate that his plea was unknowing . . . A movant's expectation that he will receive a lesser sentence does not make his plea involuntary.  Here, the guilty plea record reveals that Mitchell claimed no guarantee or other positive representation by counsel, even when the court specifically asked if he was satisfied with counsel.  Instead, he is now dissatisfied with the result.  While Mitchell undoubtedly hoped for leniency, his contention that counsel guaranteed it is refuted by the record.

Doc. [8-3] at 4-5 (internal citations omitted).

The court went on to note with approval the motion court's finding that "Mitchell stated under oath that no promises had been made to induce his guilty pleas," and that "[Mitchell] also said he understood he could receive more than the State's 20-year recommendation and he understood he faced up to 45 years plus three life sentences." *Id*. at 5.  Accordingly, the Missouri Court of Appeals affirmed the motion court's rejection of Mitchell's claim that ineffective assistance of counsel had rendered his plea unknowing and involuntary. *Id*. at 6.

This Court's review of the plea colloquy confirms the reasonableness of the state court's conclusions.  Mitchell's plea colloquy clearly indicates that his plea was knowing and voluntary,

6

and that his attorney did not make any improper guarantees or promises concerning sentencing that could have influenced Mitchell's decision to plea. *See* Doc. [8-6]. The plea judge explained that there is no plea bargain in the case and asked Mitchell whether he understood that, by pleading guilty, he was "asking [the judge] to determine what the appropriate resolution of this case should be." *Id*. at 3. Mitchell replied, "Yes, sir." *Id*. The judge then asked whether "anybody made any promise to [Mitchell] about what [the judge's] decision would be," and Mitchell replied, "No, sir." *Id*. The judge asked Mitchell whether he understood that if he did not agree with the sentence, he would "not be allowed to take back [his] guilty plea," and Mitchell confirmed that he understood. *Id*. at 4. The plea judge asked Mitchell whether he had an adequate chance to consult with his attorney regarding the charges and the effect of a guilty plea. *Id*. at 11. Mitchell replied, "Yes." *Id*. When asked whether he had an adequate opportunity to discuss the case with his attorney, and whether his attorney explained his legal rights and what could happen if he pled guilty, Mitchell again stated, "Yes, sir." *Id*. The plea judge then asked Mitchell whether he had any complaints or criticisms of his attorney, and Mitchell replied, "No. sir." *Id*. When asked whether he was satisfied with his legal services, Mitchell replied in the affirmative.

The plea judge then asked the state prosecutor to accurately describe all the offenses with which Mitchell was charged and the evidence that could be presented at trial to support those charges. *Id*. at 6-9. The judge asked Mitchell whether everything the prosecutor stated was true, and he answered, "Yes, sir." *Id*. at 9. The court then explained that the range of punishment for the offenses included up to three life sentences plus 45 years' imprisonment. *Id*. at 9. The plea judge asked the State for its recommended sentence, and the prosecutor indicated that the State was seeking 20 years' imprisonment. *Id*. at 9-10. At that time, the judge asked Petitioner's

attorney whether he was aware of the State's recommendation, and when plea counsel indicated that he was not, the judge allowed him time to confer once again with Mitchell. *Id*. at 10. After an off-the-record discussion between Mitchell and plea counsel, Mitchell again confirmed that he wished to proceed with his plea. *Id*. The judge explained to Mitchell that he was compelled to consider the entire possible range of punishment and that he could sentence him to a term of years greater than the State's recommendation. *Id*. at 10-11. Mitchell confirmed that he understood the possible range of sentence. The plea judge went on to ask Mitchell whether he also understood that if he did not plead guilty, he could still have a jury trial that would begin that same day. *Id*. at 13. Mitchell verified that he knew he retained the right to a jury trial if he chose not to proceed with his plea. Finally, the judge yet again asked whether anyone had made any promises or threats to induce Mitchell's plea and whether his plea was made of his own free will. *Id*. at 15-16. Mitchell confirmed his voluntary consent, and the court accepted his plea of guilty to all charges. *Id*. at 16. Upon review of this record, this Court agrees with the state court that Mitchell's plea was made voluntarily and intelligently, and with a full understanding of the charges and the consequences of his plea.

The Missouri Court of Appeals' determination that Petitioner's plea was voluntary and that he was satisfied at the time with his attorney's performance has ample support in the record. Thus, the Missouri Court of Appeals reasonably found that Mitchell did not establish that, were it not for his counsel's alleged deficient counsel, he would not have pleaded guilty and would have proceeded to trial. This Court concludes, then, that the Missouri Court of Appeals' rejection of Mitchell's claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of

the evidence presented in state court. The Court will deny relief on Petitioner's sole ground for relief.

**IV. Conclusion**

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues . . . deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that reasonable jurists could not differ on Petitioner's claims, so the Court will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. [1]) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FINALLY ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

Dated this 30th day of September, 2020.

*Sarah E. Pitlyk*

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE